UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOHN ADRAIN, an individual,<br><br>        Plaintiff,<br><br>        vs.<br><br>WELLS FARGO BANK, N.A., a foreign corporation; QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, INC., a Washington corporation; and HSBC BANK USA, N.A., a Maryland corporation,<br><br>        Defendants. | No. 2:16-cv-00142-SAB<br><br>**ORDER DENYING MOTION TO DISMISS** |

**INTRODUCTION AND POSTURE**

        Before the Court is Defendants' Motion to Dismiss, ECF No. 15. Plaintiff filed suit in Spokane County Superior Court seeking to enjoin a foreclosure on his house and pursuing claims for violations of the Consumer Protection Act ("CPA"), breach of fiduciary duty, and negligent misrepresentation. The state court entered an injunction prohibiting the trustee's sale of Plaintiff's property, which is still in force. Defendants removed the case, and Plaintiff filed a motion to remand the case to state court, which the Court denied. ECF No. 14. The two Defendant

banks, Wells Fargo and HSBC, moved to dismiss on August 31, 2016. A response and reply were filed. The Court heard oral argument on October 20, 2016 in Spokane, Washington. For the reasons set forth below, the Court **DENIES** the motion to dismiss.

### FACTS

The following facts, gleaned from the complaint, are assumed true and interpreted in the light most favorable to Plaintiff. *Hays v. City of Spokane*, No. CV-11-0010-LRS, 2011 WL 4852311, at *2 (E.D. Wash. Oct. 13, 2011). Plaintiff John Adrain acquired real property at 3510 N. Indian Bluff Road, Spokane, Washington, 99224 through a statutory warranty deed recorded June 14, 2007. At some point in time, Plaintiff sought to refinance the mortgage he took to buy the house. Defendant Wells Fargo refused to refinance the mortgage, and as a result Plaintiff requested a loan modification and mortgage assistance.

Plaintiff completed an application with all required information in April, 2014. Plaintiff also attempted to enter foreclosure mediation with Wells Fargo, who refused to mediate in good faith and failed to provide information required under federal and Washington law. Over eighteen months, Wells Fargo repeatedly requested information it already had, refused to take provided information, and caused several employees to make identical requests of Plaintiff, all while harassing Plaintiff with threats of foreclosure and refusing to meet to discuss these issues.

A mediation was held on May 12, 2015 but Wells Fargo did not participate in good faith[1] because it denied that the property at 3510 N. Indian Bluff Road was

---

[1] Defendants submitted a certificate indicating that they participated in good faith, but that conclusion is a factual one inappropriate to resolve on a motion to dismiss.

at issue, and denied receiving information vital to mediation that Plaintiff had provided on multiple occasions.

The mediation was continued to July 20, 2015 and Plaintiff again submitted information requested by Defendant. The bank again declared it did not have the necessary information which was in its control, and the mediation session was again continued to September 2, 2015. At this point, Plaintiff requested information required by Washington law, which Wells Fargo did not supply. The planned mediation did not occur on September 2, 2015.

On September 18, 2015 Wells Fargo claimed Plaintiff did not qualify for the federal Home Affordable Modification Program ("HAMP"). Plaintiff did qualify, and thus this was a false conclusion and in making it Wells Fargo ignored or disregarded Plaintiff's financial records. Plaintiff appealed the initial decision on October 14, 2015, and provided relevant financial information and documentation. Simultaneously, Plaintiff again requested from Wells Fargo information required under the Foreclosure Fairness Act. A mediation was scheduled for November 5, 2015, where Wells Fargo again did not participate in good faith because it refused to consider documents which proved Plaintiff qualified for HAMP.

Because of Wells Fargo's wrongful actions, the bank improperly considered Plaintiff to be in a state of default, and trustee Defendant Quality Loan Service recorded a notice of foreclosure on December 28, 2015. Defendants did not contact Plaintiff or conduct due diligence prior to the recording of the notice, and did not notify Plaintiff of rights under the Washington State Foreclosure Fairness Act.

## STANDARD

A motion to dismiss for failure to state a claim may be granted only when the plaintiff's allegations, taken as true, demonstrate the plaintiff is not entitled to relief as a matter of law. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Mendocino*

*Environ. Cntr. v. Mendocino Cnty.*, 14 F.3d 457, 460 (9th Cir. 1994). These motions are disfavored. *Gilligan v. Jamco Corp.*, 108 F.3d 246, 249 (9th Cir. 1997); *Bykov v. Eacceleraion Corp.*, No. C05-5251 RBL, 2005 WL 2573347, at *1 (W.D. Wash. Oct. 11, 2005). When considering such a motion, the Court accepts all allegations in the complaint as true, and draws all reasonable inferences in favor of the plaintiff. *Parks Schl. of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (construing complaint in "light most favorable to plaintiff"); *Hays*, 2011 WL 4852311, at *2. However, the Court need not accept legal conclusions as factual allegations, and the bare recital of the elements of a claim are insufficient. *Iqbal*, 556 U.S. at 678. Overall, the claims for relief must be plausible on their face. *Id.* A claim can be dismissed when the allegations show that relief is barred as a matter of law. *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## ANALYSIS

The Complaint brings four causes of action. The Court analyzes the sufficiency of each claim for purposes of a Rule 12(b)(6) motion to dismiss.

*Claim 1: Injunctive relief*. A preliminary injunction was entered by the state court before removal, and is still in place. Plaintiff couches his first claim as one for an injunction, and Defendants argue that injunctive relief is not a claim, but a remedy. *Kwai Ling Chan v. Chase Home Loans, Inc.*, 2012 U.S. Dist. LEXIS 62958, at *19-20 (W.D. Wash. May 4, 2012).

Defendants are correct, so far as the conclusion goes. Plaintiff clearly states he is basing his request for injunctive relief on the Washington Deed of Trust Act, RCW 61.24.130(1). The statute creates a cause of action for an injunction to restrain the sale of a foreclosed home. In the state court, a plaintiff need only raise a proper legal or factual issue to win an injunction. *Id.* Further, Plaintiff's complaint raised a legal and factual issue that allows consideration of an

injunction, and the state court granted one, finding that a violation of the Deed of Trust Act had been alleged. *See* ECF No. 1-3 at 92:21-25 (state court order restraining sale). These issues include allegations of "improper notice [of foreclosure], improper establishment of beneficiaries, failure to mediate in good faith, [and] failure to provide documents prior to foreclosure pursuant to the Washington [Foreclosure Fairness Act] and Deed of Trust Act." ECF No. 17 at 9:15-18. Plaintiff has alleged a claim under the Deed of Trust Act sufficient to allow the Court to consider injunctive relief, and the Court must sustain this cause so that the ultimate issue of a permanent injunction and the underlying Deed of Trust Act violation may be considered.

*Claim 2: Consumer Protection Act*. Defendants bring two arguments to dismiss Plaintiff's CPA claim: (1) that they are exempt under RCW 19.86.170; and (2) that Plaintiff's claim is ill-pled under the Supreme Court cases of *Iqbal v. Ashcroft*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The Court discusses each argument in turn.

(1) EXEMPTION UNDER RCW 19.86.170. Defendants claim they are exempt as a matter of law from Plaintiff's CPA claim under RCW 19.86.170, which states that the CPA is inapplicable "to . . . actions or transactions permitted by any other regulatory body or officer acting under statutory authority of this state or the United States." *Id.* In short, when an entity's actions are regulated by a federal agency, Washington law may apply an exemption disallowing CPA claims resulting from those actions. *See, e.g.*, *Estes v. Wells Fargo Home Mortg.*, No. C14-5234 BHS, 2015 WL 362904, at *5 (W.D. Wash. Jan. 27, 2015).

Defendants argue that they are federally-licensed banks, and governed under the Dodd-Frank Act, Pub. L. 111-203, and the Consumer Financial Protection Bureau established thereby. A statutory objective of the Bureau is to protect consumers from unfair, deceptive, or abusive acts by lenders. 12 U.S.C.

§ 5511(b)(2). Regulations set by the Bureau under this purview require mortgage lenders to submit certain documents or filings in relation to a foreclosure. 12 C.F.R. § 1024.38(b)(1)(v). Other regulations require lenders to provide information on loss mitigation options. 12 C.F.R. § 1024.38(b)(2)(i). The Bureau has enforcement powers to bring civil suits against regulated entities for violations of these regulations, with available remedies including rescission, restitution, disgorgement, damages, penalties, and injunctive relief. 12 U.S.C. § 5564(a). Plaintiff's CPA claims revolve around the allegations that Defendants did not provide certain documents in the foreclosure period, and failed to notify Plaintiff of harm reduction options or properly consider those options. These are activities that are facially prohibited by the above-described federal regulations. Because this conduct is prohibited by a federal agency, Defendants claim it is exempted from CPA enforcement under the CPA's concurrent jurisdiction exemption. RCW 19.86.170; *see also Estes*, 2015 WL 362904, at *5 (explaining that the law "does not exempt actions or transactions merely because they are regulated generally; the exemption applies *only if the particular practice* found to be unfair or deceptive is *specifically permitted, prohibited, or regulated*") (emphasis added).

However, a finding of concurrence between the CPA and relevant federal law is not the end of the inquiry. If the Court finds the subject matter is concurrent with a federal agency, Washington courts conduct a "primary jurisdiction" analysis. *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303-04 (1976); *Vogt v. Seattle-First Nat. Bank*, 117 Wn.2d 541, 554 (1991). The Court considers three factors in this analysis: (1) whether "[t]he administrative agency has the authority to resolve issues that would be referred to it by the court;" (2) whether the agency has "special competence over all or some part of the controversy which renders the agency better able than the court to resolve the issues;" and (3) if "[t]he claim before the court must involve issues that fall within the scope of a pervasive regulatory scheme so that the danger exists that judicial action would conflict with

the regulatory scheme." *In re Real Estate Brokerage Antitrust Litig.*, 95 Wn.2d 295, 302-03 (1980). If, applying these factors to the facts of the case, the Court finds that the agency has primary jurisdiction, the exemption in RCW 19.86.170 applies and the claim is dismissed. *See Miller v. U.S. Bank of Washington, N.A.*, 72 Wash. App. 416, 422 (1994). If not, the Court may hear the claim.

(1) *First Factor*: whether the agency has authority to resolve the issues. An objective of the Bureau is to protect consumers from unfair or deceptive practices. 12 U.S.C. § 5511(b)(2) ("The Bureau is authorized to exercise its authorities under Federal consumer financial law" to ensure its objectives). Defendants are national banks subject to federal regulation. Defendants are correct that the Consumer Financial Protection Bureau has issued regulations of the type that Plaintiff contests are CPA violations. *See, e.g.*, 12 C.F.R. § 1024.38 & 1024.41 (mandating disclosure of certain documents before foreclosure, prohibiting false mortgage documents and mandating the disclosure of harm reduction options). Additionally, the Bureau can instigate administrative proceedings or civil actions against regulated entities for such violations. 12 U.S.C. § 5564(a). Given these facts, it appears that the Bureau has authority over these issues.

The inquiry into this factor does not end here. The type of relief or remedy available by private action, compared to the relief that can be issued by the agency, is a consideration. *See Vogt*, 117 Wn.2d at 555. Under federal law, the Bureau may seek rescission, restitution, damages, and penalties.  12 U.S.C. § 5565(a)(2)(A)-(H). However, there is no provision in the federal law for treble damages or attorneys' fees, which are available under the CPA. *Burke Family Living Trust v. Metro. Life Ins. Co.*, No. C09-5388-FDB, 2009 WL 2947196, at *3 (W.D. Wash. Sept. 11, 2009). The federal law also explicitly grants courts the jurisdiction to award legal and equitable relief. 12 U.S.C. §5565(a)(1).

In *Vogt*, the Washington Supreme Court concluded that a state trial court had primary jurisdiction where the agency in question had "authority to resolve

questions of unfair and deceptive practices by national banks," 117 Wn.2d at 555,
but lacked the ability to grant the relief requested, *id.*; *see also Brokerage Antitrust
Litig.*, 95 Wn.2d at 304. It partially grounded this ruling on the finding that the
plaintiff could not seek treble damages and attorneys' fees under the federal
scheme, while those remedies were available under the CPA. *Vogt*, 117 Wn.2d at
555. Plaintiff in this case specifically seeks treble damages and attorneys' fees.
ECF No. 1-2 at 21.

Ultimately, this factor cuts for both parties. There is explicit authority for
the Consumer Financial Protection Bureau to hear these issues, administratively or
by filing a court action. However, the Washington Supreme Court has instructed
lower courts to consider the relief available under different schemes, and the CPA
provides for more than the federal regulations.

(2) *Second factor*: the agency must have special competence over all or
some part of the controversy which renders the agency better able than the court to
resolve the issues. As above, the federal regulations do govern the behavior that
the banks allege are subject to exemption. However, Defendants do not
sufficiently describe why the agency is better able than the Court to resolve these
issues. "National banks are subject to state restrictions generally applicable to all"
mortgage lenders, *Vogt*, 117 Wn.2d at 556 (concluding national banks were
subject to state law on trustees), and courts have practice in applying various state
and federal laws to banks. Indeed, this Court routinely handles both Real Estate
Settlement Procedure Act[2] ("RESPA") claims and, sitting in diversity, is uniquely
qualified to determine Plaintiff's CPA claims as well as related common law and
statutory claims.

Congress, and the agency itself, appear to conclude that the agency's
competency is not a necessary component to resolve disputes over a mortgage

---

[2] 12 U.S.C. § 2601 *et seq.*, the Congressional act which is the source for the
regulations in question.

lender's allegedly unfair or deceptive acts, because "[a] borrower may enforce the provisions of [the loss mitigation section] pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))." 12 C.F.R. § 1024.41(a), amongst other sections granted a private cause of action. This indicates that Congress and the Bureau intend that private actions may be brought by plaintiffs over these regulations. As a result, the Consumer Financial Protection Bureau does not indicate that its expertise is a requirement for actions enforcing these provisions, or that a federal court is too ill-equipped to handle such claims. This factor cuts against Defendants.

(3) *Third factor*: the claim before the court must involve issues that fall within the scope of a pervasive regulatory scheme so that the danger exists that judicial action would conflict with the regulatory scheme. There is little chance that this Court's decisions on Defendants' allegedly unfair and deceptive practices will conflict with a pervasive regulatory scheme. First, unlike the federal bank regulations at issue in *Miller*, 72 Wash. App. at 422, mortgage practices in general are jointly regulated by state and federal law. *See, e.g.*, *Vogt*, 117 Wn.2d at 556 (finding that the precursor agency to the Bureau "recogniz[ed] the concurrent authority of the states to regulate trust activities of national banks"). Washington State has passed many statutes on mortgage and foreclosure law. See, for example, the Deed of Trust Act, RCW 61.24.0001 *et seq.*; and the Foreclosure Fairness Act, RCW 61.24.030. Congress has likewise passed multiple laws on mortgage lending, including the consumer regulations Defendants cite here, which were enacted as part of RESPA, 12 U.S.C. § 2601 *et seq.*, and the Dodd-Frank legislation. There is a long history of concurrent jurisdiction over mortgage law between the states and the federal government. This is unlike, for example, federal bank regulation or copyright law, which by their very nature are exclusively federal.

Second, this Court's orders will not conflict with federal consumer law. Congress specifically provided that the federal regulations Defendants cite are to

be enforced in United States district courts, or even state courts of competent jurisdiction. 12 U.S.C. § 5564(f). The same law would be argued to the same or a similar court, and this Court is more prepared and more familiar with issues of federal law and banking regulation than the state court at issue in *Miller*, 72 Wash. App. at 422 ("State courts are less competent" to "resolve disputes arising in the bank-customer relationship").

Third, the federal regulations in question "recogniz[e] the concurrent authority of the states to regulate" mortgage document procedures. *Vogt*, 117 Wn.2d at 556. For example:

> "State laws that are inconsistent with [the laws and regulations in question] are preempted *to the extent of the inconsistency*. However . . . these regulations do not annul, alter, affect, or *exempt* any person subject to their provisions from complying with the laws of any State with respect to settlement practices, except to the extent of the inconsistency."

12 C.F.R. § 1024.5(c)(1) (emphasis added). Thus, short of conflictual preemption, the agency in question recognizes the ability of states to regulate mortgage practices, and by implication the ability of plaintiffs to bring actions enforcing state law. Further, Defendants cede there are no inconsistencies in the state and federal laws, instead claiming they are identical. Also consider the state legislature's description of the purpose of the CPA:

> "The legislature hereby declares that the purpose of this act is to *complement* the body of federal law governing . . . unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition. It is the intent of the legislature

that, in construing this act, the courts be guided by final decisions of

the federal courts . . . interpreting the various federal statutes dealing

with the same or similar matters."

RCW 19.86.920 (emphasis added). Given that both the state and the federal

regulation indicate that this Court is competent to hear the regulated claims, and

that this Court's decisions will not conflict with federal law, this factor cuts

against Defendants.

*Conclusion*. Though under the first factor the Bureau has authority to

resolve the issues in question, the inquiry does not end there. The Bureau does not

offer as extensive relief as the CPA, and the relevant statutes and regulations

indicate that courts can hear the issues in this case. This Court is well-equipped to

hear the issues governing these claims, federal regulations indicate that the

Bureau's competence is not a necessary component of a claim, and both state and

federal legislation indicate that this Court's orders will fit into the laws governing

these claims. After weighing the primary jurisdiction factors, the Court concludes

that Washington State nor Congress intended the Consumer Financial Protection

Bureau have primary jurisdiction over Plaintiff's claims, and rejects Defendants'

arguments that they are exempt under the CPA.

(2) INSUFFICIENCY OF CLAIM. To sufficiently plead a CPA claim in

Washington, a plaintiff must plausibly allege that (1) an unfair or deceptive act or

practice (2) occurred in trade or commerce (3) which impacted the public interest

(4) and injured the plaintiff (5) and was caused by the defendant. *Hangman Ridge

Training Stables v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986). Defendants

allege Plaintiff's complaint does not satisfy these elements.

Alleging a violation of the Deed of Trust Act is sufficient to allege an unfair

or deceptive act under the CPA. *See Lyons v. U.S. Bank Nat. Ass'n*, 181 Wn.2d

775, 785 (2014). Plaintiff alleges Defendants failed to initiate contact prior to

foreclosure, failed to exercise due diligence in before recording a notice of foreclosure, failed to participate in mediation in good faith, and did not provide notice of the foreclosure and foreclosure information to all recorded owners. These alleged violations of the Fair Foreclosure Act and the Deed of Trust Act are plausible and sufficient to plead a CPA claim that is an unfair or deceptive act that impacts the public interest. *See Walker v. Quality Loan Serv. Corp. of Wash.*, 176 Wash. App. 294, 320 (2013).

Plaintiff also claims that he was improperly placed into default as a result of Defendants' actions. The loss of a "minimal" property interest, slight expense, and the incurring of attorneys' fees have been held to sufficient injury to plead a CPA claim. *Panag v. Farmers Insur. Co. of Wash.*, 166 Wn.2d 27, 62 (2009). Plaintiff's claim easily exceeds this threshold. Finally, Plaintiff's allegation that he was not in default, but improperly considered as such by Defendants, alleges sufficient causation to allow the CPA claim to survive the motion to dismiss. Plaintiff's allegations pass the plausibility standard set by *Iqbal* and *Twombly*.

*Claim 3: Breach of Fiduciary Duty*. The complaint seems to bring a claim of breach of fiduciary duty against Quality, and Defendants Wells Fargo and HSBC do not address the claim in their motion to dismiss. However, in his response, Plaintiff appears to argue that because HSBC refers to itself as a "trustee" in the motion to dismiss, it may have breached a fiduciary duty and that any such claim against HSBC should survive dismissal. ECF No.17 at 10:1-9. The parties otherwise seem to agree that there is no such claim lodged against Wells Fargo, and the banks are not moving to dismiss this claim against Quality.

In reply, HSBC says no claim against HSBC appears in the complaint, and there are no facts that could plausibly allege such a claim. HSBC is correct. The complaint contains no claims for breach of fiduciary duty against Defendant banks, and the Court will not read one into the complaint.

*Claim 4: Negligent Misrepresentation*. In Washington, a claim for negligent misrepresentation must prove (1) that a defendant supplied false information for the guidance of others in their business transactions; (2) that the defendant knew or should have known that the information was supplied to guide a plaintiff in business transactions; (3) the defendant was negligent in obtaining or communicating the false information; the plaintiff reasonably (4) relied (5) on the information; and (6) the false information proximately caused damages to the plaintiff. *Austin v. Ettl*, 171 Wn.2d 82, 88 (2012).

In his complaint, Plaintiff alleges that Wells Fargo represented to him that Wells Fargo would modify his mortgage loan if Plaintiff qualified for HAMP, and Plaintiff filed a HAMP application. Plaintiff further alleges that Wells Fargo knew Plaintiff qualified for HAMP, but informed Plaintiff he did not qualify and refused to modify his loan. If Wells Fargo informed Plaintiff that he did not qualify for HAMP when it knew or should have known that he did, it affirmatively misrepresented false information for purposes of Plaintiff's business transactions.[3] *Id*. Plaintiff also alleges that Wells Fargo negligently misrepresented it had not received information needed to mediate in good faith. This act would constitute the negligent misrepresentation of business information.

Defendants also argue that Plaintiff did not plead the element of reliance and cite a federal case from California, interpreting a common law claim for fraud under California law. *Valtierra v. Wells Fargo Bank, N.A.*, 2011 WL 2078024, at

---

[3] At oral argument, Defendants indicated that they would have no obligation under the law to modify a qualifying application for HAMP, while Plaintiff indicated a lender would have such an obligation. Though the argument may become material later in this case, it is irrelevant now because (1) the issue was not raised by Defendants in their motion, and (2) the allegations that Defendants negligently misinformed Plaintiff that he did not qualify for HAMP when he did, and that Plaintiff suffered harm thereby, sufficiently pleads a cause of action.

*3 (E.D. Cal. May 25, 2011). It is unclear why this case is relevant to the issue at hand. Plaintiff's complaint demonstrates that he would have proceeded with a HAMP refinancing of his mortgage or sought to resolve this case through mediation had he not relied on Defendant's alleged representations. This is a sufficient pleading to survive a 12(b)(6) motion to dismiss.

Finally, Defendant alleges that the negligent misrepresentation claim should fail as a matter of law because Plaintiff defaulted on his mortgage, and thus his own behavior caused his harm, precluding any proximate cause on part of Defendants. However, Plaintiff alleges that he was not properly in default due to various statutory violations of Washington law, a failure to mediate in good faith, and the improper refusal of a loan modification. Thus, Plaintiff has sufficiently alleged that these actions, done by Defendants, proximately caused an improper default and harmed Plaintiff.

Plaintiff has sufficiently pled the elements of a claim for negligent misrepresentation under the Federal Rules of Civil Procedure and Supreme Court precedent, and the motion to dismiss this claim is denied.

## CONCLUSION

The motion to dismiss the claim for an injunction is denied, as Plaintiff clearly based the request for injunctive relief on the Deed of Trust Act, which specifically allows for the restraint of trustees' sales. Insofar as the Court must ultimately resolve the question of a permanent injunction and the underlying Deed of Trust Act claim, this claim survives. The motion to dismiss Plaintiff's CPA claim is denied, because this Court carries primary jurisdiction over the issues governing it. There is no breach of fiduciary duty claim alleged against the banks, and thus there is no claim to dismiss. Finally, the motion to dismiss the claim for negligent misrepresentation is denied because Plaintiff plausibly alleged factual allegations for each element of the claim.

1  //

2  //

3  //

4       Accordingly, **IT IS HEREBY ORDERED**:

5  1. Defendants' Motion to Dismiss, ECF No. 15, is **DENIED**.

6       **IT IS SO ORDERED.**  The Clerk of Court is directed to enter this Order

7  and forward copies to counsel.

8       **DATED** this 25th day of October, 2016.



Stanley A. Bastian
United States District Judge