1  Valerie I. Holder, WSBA No. 42968
   **Keesal, Young & Logan**
2  1301 Fifth Avenue, Suite 3100
   Seattle, Washington  98101
3  Telephone:  (206) 622-3790
   Facsimile:   (206) 343-9529

4

5              **UNITED STATES DISTRICT COURT**

6          **FOR THE EASTERN DISTRICT OF WASHINGTON**

7  JOHN ADRAIN, an Individual,        ) Case No. 2:16-cv-00142-SAB
                                      )
8                        Plaintiff,   ) **WELLS FARGO AND HSBC BANK,**
                                      ) **USA, AS TRUSTEE'S MOTION**
9            vs.                      ) **FOR SUMMARY JUDGMENT**
                                      )
10 WELLS FARGO BANK, N.A., a          ) <u>NOTED FOR HEARING</u>:
   foreign corporation; QUALITY LOAN  ) Date:  September 13, 2018 at 2:30 p.m.
11 SERVICE CORPORATION OF             ) **With Oral Argument**
   WASHINGTON, INC., a Washington     ) Thomas S. Foley United States
12 corporation; and HSBC BANK USA,    ) Courthouse
   N.A., a Maryland corporation,      ) 920 West Riverside Ave, Room 840
13                                    ) Spokane, WA 99201
                         Defendants.  )
14 _____ ) **The Honorable Stanley A. Bastian**

15

16

17

18

19

20

21

22

23

Case No.:  2:16-CV-00142-SAB
WELLS FARGO AND HSBC BANK, USA, AS
TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.      INTRODUCTION .......................................................................... 1

II.     STATEMENT OF FACTS ............................................................. 2

    A.      PLAINTIFF OBTAINS A MORTGAGE LOAN AND
        AGREES TO REPAY $652,000. ........................................... 2

    B.      PLAINTIFF INQUIRES ABOUT LOAN MODIFICATIONS. ....... 2

    C.      PLAINTIFF THREATENS TO STOP PAYING ON HIS
        LOAN. ............................................................................... 3

    D.      PLAINTIFF WAS TOLD THE INVESTOR DOES NOT
        PARTICIPATE IN HAMP AND DOES NOT ALLOW A
        PERMANENT REDUCTION OF HIS INTEREST RATE. ............. 3

    E.      PLAINTIFF CONTINUED TO NEGOTIATE FOR A LOWER
        INTEREST RATE AND CONFIRMS HE WAS NOT FACING
        A HARDSHIP. ..................................................................... 4

    F.      PLAINTIFF DEFAULTS ON HIS LOAN AS THREATENED. ..... 5

    G.      PLAINTIFF RENEWS HIS INTEREST IN A LOAN
        MODIFICATION. ................................................................. 6

    H.      PLAINTIFF'S FINANCIAL STRENGTH GROWS. ....................... 6

    I.      FORECLOSURE PROCEEDINGS COMMENCE. .......................... 7

    J.      PLAINTIFF AND WELLS FARGO ATTEND MEDIATION
        AND THE MEDIATOR CERTIFIES THE PARTIES
        MEDIATED IN GOOD FAITH. ............................................. 8

    K.      THE FORECLOSURE PROCESS RESUMES. .............................. 10

    L.      PLAINTIFF *AGAIN* REITERATES HIS ABILITY TO PAY
        AND DECLARES HIS LACK OF INTEREST IN
        RETAINING THE PROPERTY. .............................................. 10

    M.      PLAINTIFF FILES THIS ACTION AND OBTAINS AN
        INJUNCTION. .................................................................... 11

III.     AUTHORITY ............................................................................ 11

Case No.:  2:16-CV-00142-SAB
WELLS FARGO AND HSBC BANK, USA, AS
TRUSTEE'S MOTION FOR SUMMARY JUDGMENT - i

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 3100
SEATTLE, WASHINGTON 98101
(206) 622-3790

A.    LEGAL STANDARD FOR SUMMARY JUDGMENT.................. 11

B.    THE HOME AFFORDABILITY MODIFICATION
      PROGRAM. ........................................................................ 11

C.    THE WASHINGTON FORECLOSURE FAIRNESS ACT. .......... 12

D.    PLAINTIFF'S CPA CLAIM MUST BE DISMISSED WITH
      PREJUDICE. ...................................................................... 12

      1.    Plaintiff Cannot Show an Unfair or Deceptive Act
            or Practice. ............................................................. 13

      2.    Plaintiff Cannot Show a Public Impact................................ 15

      3.    Plaintiff Cannot Prove an Injury Caused by
            Defendants. ............................................................. 18

E.    PLAINTIFF'S NEGLIGENT MISREPRESENTATION
      CLAIM MUST BE DISMISSED.................................................... 20

IV.   CONCLUSION............................................................................ 21

Case No.:  2:16-CV-00142-SAB
WELLS FARGO AND HSBC BANK, USA, AS
TRUSTEE'S MOTION FOR SUMMARY JUDGMENT - ii

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 3100
SEATTLE, WASHINGTON 98101
(206) 622-3790

Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and HSBC Bank, USA, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2007-11 ("HSBC Bank as Trustee" collectively, "Defendants") move for summary judgment dismissing John Adrain's ("Plaintiff") complaint with prejudice pursuant to Fed. R. Civ. P. 56.

## I.   <u>INTRODUCTION</u>

In 2011, Plaintiff, who was at all times capable of making his monthly payments, sought to lower his interest rate and principal balance. The housing market had declined and interest rates on average were lower than what Plaintiff was paying. Plaintiff, unable to refinance his loan, sought a modification in the hopes he could get more desirable terms. Servicers, however, are not required to modify the terms of a borrower's loan.

During the decline in the housing market, Home Affordable Modification Program ("HAMP") was created, which sought to provide qualified borrowers relief on mortgage payments. However, HAMP was not designed to provide lower interest rates and payments to borrowers who could otherwise afford their loan payments. Nor did HAMP require servicers to modify eligible loans against investor restrictions.

Plaintiff may have preferred better loan terms, but HAMP was not available to him. The investor to his loan did not allow for modification of the loan terms. As a result of Plaintiff's failure to make payments, Defendants had the contractual right to foreclosure. Plaintiff's claims should be dismissed.

Case No.:  2:16-CV-00142-SAB
WELLS FARGO AND HSBC BANK, USA, AS
TRUSTEE'S MOTION FOR SUMMARY JUDGMENT - 1

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 3100
SEATTLE, WASHINGTON 98101
(206) 622-3790

1

## II.     STATEMENT OF FACTS

2

### A.     Plaintiff Obtains a Mortgage Loan and Agrees to Repay $652,000.

3

4 Plaintiff obtained a $652,000 loan from Wells Fargo on June 12, 2007.  In

5 connection with the loan, Plaintiff signed a promissory note ("Note") promising to

6 repay the loan.  (Declaration of Meredith R. Deal ("Deal Decl."), Ex. 1.)  The Note

7 contains a fixed interest rate at 6.625 percent, and states that the monthly payment

8 is $4,174.83.  *Id*.  The Note is secured by a deed of trust ("DOT") for the property

9 located at 3510 N. Indian Bluff Road, Spokane, WA 99224 ("Property"), and

10 recorded under Spokane Auditor's File No. 5549209 (the Note and DOT are

collectively referred to as the "Loan").  (*See* ECF No. 16-2.)

11 Plaintiff agreed that if he failed to "pay the full amount of each monthly

12 payment on the date it is due, [he] will be in default."  (*Id*. at Ex.1, ¶ 6(B).)

13 Plaintiff also agreed that "if the default is not cured…Lender at its option, may

14 require immediate payment in full of all sums…without further demand and may

15 invoke the power of sale…" (*Id*. at ¶ 22.)

16

### B.     Plaintiff Inquires about Loan Modifications.

17 In November 2011, Plaintiff initiated the loan modification process, but also

18 said he was not sure whether he wanted to move forward with applying.  (Deal

19 Decl., Ex. 2.)  On December 14, 2011, Wells Fargo sought to obtain the necessary

20 information from Plaintiff.  *Id*.  That same day, however, Plaintiff stated that he

21 was attempting to refinance his loan and did not want to discuss possible loss

22 mitigation options any further.  *Id*.

23

Case No.:  2:16-CV-00142-SAB
**WELLS FARGO AND HSBC BANK, USA, AS**
**TRUSTEE'S MOTION FOR SUMMARY JUDGMENT - 2**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

## C.     Plaintiff Threatens to Stop Paying on his Loan.

Plaintiff alleges that, in 2012, despite his efforts, he was unable to refinance his loan.  According to Plaintiff, this made him "pretty upset at Wells Fargo" and during recorded calls with Wells Fargo he threatened that he was going to stop making his payments, and that Wells Fargo could "take the house back."  (Deal Decl., Ex. 3.)  Below are excerpts of Plaintiff's February 2012 conversation with Wells Fargo in which he repeatedly stated his intention to stop making payments on his Loan:

| 02/14/2012 | "So I'm seriously considering to just quit making my payment, and maybe that'll get your attention." |
|---|---|
| (Deal Decl., Ex. 3.) | "So I'm just ready to just quit making my payment, I'm so frustrated. I figure that will get your attention." |
| | "They can take the house back and see how they like it and then take a huge loss on it." |
| | "So really I'm complaining and I'm just thinking about not making my payment.  And then maybe you guys would be nicer to me then." |
| | "Well I'd like to lodge a complaint higher up with management so when I quit making my payment, you'll know why." |

On that same day, Plaintiff also made clear to Wells Fargo he was not looking for a loan modification or relief under the available government programs.

| 02/14/2012 | "Well, I'm trying to get refinanced." |
|---|---|
| (*Id.*) | "I don't want any aid," "I don't want any government Obama bailouts.  I just want to get refinanced." (Id.) |

Plaintiff wanted a refinance, not a modification.

## D.     Plaintiff was told the Investor does not Participate in HAMP and does not allow a Permanent Reduction of his Interest Rate.

In April 2012, Plaintiff continued his threats to stop making payments:

Case No.:  2:16-CV-00142-SAB
WELLS FARGO AND HSBC BANK, USA, AS
TRUSTEE'S MOTION FOR SUMMARY JUDGMENT - 3

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 3100
SEATTLE, WASHINGTON 98101
(206) 622-3790

| 04/10/2012 | "…I'm just going to quit making my payment…" |
| (Deal Decl., Ex. 4.) | "I'm willing to make payments. I'm just not making payments at almost 7% interest…I'm not doing it anymore." |

He could make the payments, he just did not want to under the existing loan terms.

The next day, on April 11, 2012, Wells Fargo communicated to Plaintiff, both orally and in writing, that his loan's investor has not provided Wells Fargo the contractual authority to modify his loan. (Deal Decl., Exs. 5 & 6.) Additionally, Plaintiff was informed that a permanent reduction of his interest rate and principal balance was not allowed under the investor's guidelines. (*Id*.) The investor of the loan does not participate in HAMP. (*Id*.) At that time, Plaintiff declined Wells Fargo's offer to review him for other options. (*Id.* at Ex. 6.)

### E.   **Plaintiff Continued to Negotiate for A Lower Interest Rate and Confirms He was not Facing a Hardship.**

Despite knowing the futility of his efforts to obtain a lower interest rate, Plaintiff continued threatening to stop paying on his Loan.

| 06/27/2012 | "Yea, I mean, I can't get a refinance. I was considering to quit making the payments. I haven't done that yet, but I'm considering it because you guys won't work with me…" |
| (Deal Decl., Ex. 7.) | "I'm paying an outlandish interest rate based on the market." |
| | "…that it's their jumbo mortgage, and the people that underwrite the mortgage, they don't negotiate at all. That's what I was told. So…considering you guys can just have the house back." |

Seemingly still frustrated with his failed attempts to obtain a refinance, Plaintiff lashed out at a Wells Fargo representative who tried to inform him of loss mitigation options and the need for updated documents if he wanted to be reviewed

Case No.:  2:16-CV-00142-SAB
WELLS FARGO AND HSBC BANK, USA, AS
TRUSTEE'S MOTION FOR SUMMARY JUDGMENT - 4

for a loan modification, but Plaintiff just reiterated his intent to stop making his monthly payments:

| 06/27/2012 | "you guys can just have the house back." |
|---|---|
| (*Id.*) | "It's a waste of fucking time. I'm just going to quit making my payments…[y]ou can quote me." |
| | "No, I just want the bank to fuck off and get out of my life. You can – you can quote me…Goodbye. Fuck you." |

Plaintiff confirmed that he was indeed not facing a hardship. While Plaintiff made comments to Wells Fargo about his struggles, he also touted the strength of his business and incoming cash, thus demonstrating his ability to make payments under the existing loan terms; he ***could*** pay, he just did not ***want*** to.

| 06/27/2012, (*Id.*) | "I'm depositing more and more money every month from my business." |
|---|---|

Plaintiff regretted the terms of his loan and sought to strong arm Wells Fargo, through threats of voluntary default in payments, into altering his loan terms to reflect the then-current interest rates. Plaintiff simply refused to accept that he could not force new loan terms.

### F.    Plaintiff Defaults on his Loan as Threatened.

Plaintiff eventually followed through with his threats and failed to make the November 2012 payment, and has not made any payments since.[1]  (Deal Decl., ¶ 12 & Ex. 8.).

---

[1] Pursuant to court order, Plaintiff has made monthly payments into the court registry since May 1, 2016.

Case No.:  2:16-CV-00142-SAB
WELLS FARGO AND HSBC BANK, USA, AS
TRUSTEE'S MOTION FOR SUMMARY JUDGMENT - 5

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 3100
SEATTLE, WASHINGTON 98101
(206) 622-3790

1

## G.    Plaintiff Renews his Interest in a Loan Modification.

2

Despite having been advised that the investor does not participate in HAMP

3

nor allow a permanent reduction of his interest rate, on or about March 27, 2014,

4

Plaintiff, renewed his interest in the possibility for a loan modification.  Plaintiff

5

submitted a Request for Mortgage Assistance ("RMA") form.  (Deal Decl., Ex. 9.)

6

In the RMA, Plaintiff certified under penalty of perjury that in April 2014 his

7

monthly household income was $10,833 and his household expenses were $8,951,

8

including $4,200 for his mortgage payment.  (*Id*.)

9

On April 16, 2014, Wells Fargo notified Plaintiff of additional documents

10

required in order to process his request for mortgage assistance.  (Deal Decl., ¶14,

11

Ex. 10.)  Wells Fargo required (1) a signed and dated copy of the RMA, with all

12

blank spots checked or filled-out, (2) specified income documentation, and (3) a

13

copy of the property settlement agreement from Plaintiff's divorce.  (*Id*.)  On May

14

16, 2014, Plaintiff's counsel was notified that Wells Fargo required proof Plaintiff

15

resided in the Property.  (Deal Decl., ¶15, Ex. 11.)  On May 23, 2014, Wells Fargo

16

notified Plaintiff of information that remained outstanding.  (Deal Decl., Ex. 12.)

17

On October 8, 2014, having requested but not received the necessary information;

18

Wells Fargo closed the modification application.  (Deal Decl., Ex. 13.)

19

## H.    Plaintiff's Financial Strength Grows.

20

In 2015, Plaintiff, in a recorded call with Wells Fargo, ***again*** declared his

21

ability to make his payments; he ***could*** pay, he just did not ***want*** to.  Despite

22

having been notified nearly two years earlier that the investor of his Loan does not

23

participate in HAMP and does not allow a permanent reduction of his interest rate,

Plaintiff's efforts to bully and strong arm Wells Fargo into new loan terms continued.

| 03/03/2015 | "If you guys give me a reasonable interest rate, a market interest rate, I'm ready to start making the payment immediately." |
|---|---|
| (Deal Decl., Ex. 14.) | "I just want a reasonable interest rate." |
| | "I mean, I have money to make payments, but I'm not paying payments at almost 7%." |
| | "I want to make my payment at a reasonable amount. A reasonable interest rate." |
| | "When interest rates around 4% and you're getting charged close to 7, I would say that's excessive." |

## I.    Foreclosure Proceedings Commence.

Plaintiff was well aware that he was in default on his Loan.  Indeed, during a recorded call on March 6, 2015 with Wells Fargo Plaintiff stated, "why don't you just go ahead and foreclose…I'll refer this to mediation.  I can delay this for ten years."  (Deal Decl., Ex. 15.)

On March 10, 2015, Quality Loan Service Corporation of Washington ("QLS")[2] mailed a Notice of Default ("NOD") to Plaintiff, which stated that his loan was due for the payments from November 1, 2012, and that he was delinquent in the amount of $121,535.40.  (QLS Decl., Ex. B.)  The NOD also notified Plaintiff that he may be eligible for mediation in front of a neutral third party.  (*Id*.)

---

[2] QLS was appointed as the successor trustee under the DOT through an Appointment of Successor Trustee recorded on January 21, 2015.

Case No.:  2:16-CV-00142-SAB
WELLS FARGO AND HSBC BANK, USA, AS
TRUSTEE'S MOTION FOR SUMMARY JUDGMENT - 7

Included with the NOD was a copy of a declaration from Wells Fargo stating that it was in compliance with the requirements found in RCW 61.24.031. (*Id*.)

### J.    Plaintiff and Wells Fargo Attend Mediation and the Mediator Certifies the Parties Mediated in Good Faith.

On March 11, 2015, Plaintiff's then attorney, Robert Redmond, submitted a referral to foreclosure mediation on his behalf. (McCarthy Holthus Declaration ("MH Decl."), Ex. A.) Linda Phelke ("Mediator") was assigned as the mediator. (*Id.*, Ex. B.) A letter from the State of Washington explains that the purpose of the mediation is to "discuss possible options that might stop the foreclosure sale" and "allow[] the Borrower to consider ways to end the mortgage and leave the house without a foreclosure sale." (*Id*.) The letter details the responsibilities of both the borrower and the beneficiary. (*Id*.)

On March 19, 2015, Plaintiff submitted a portion of his mediation materials, with a representation that additional materials would be forthcoming. (*Id*., Ex. C.) The RMA submitted and signed by Plaintiff under penalty of perjury provided that as of March 17, 2015, his monthly income was $16,667.67 and his total monthly debts, including $4,174.83 for his Loan payment, were $7,378.50. (Deal Decl., Ex. 16.) Per Plaintiff's 2015 RMA, he had $9,289.17 in surplus income each month. (*Id*.) Plaintiff's counsel was notified of supplemental documents required to review Plaintiff for a loan modification. (MH Decl., Ex. D.)

On April 2, 2015, the Mediator's office sent notification that the Plaintiff's required document submission was due on April 4, 2015, and the beneficiary's documents were due on April 24, 2015. (*Id.*, Ex. E.) On April 7, 2015, the beneficiary, through counsel, submitted its required disclosures, which included: (1) NPV

Case No.: 2:16-CV-00142-SAB
WELLS FARGO AND HSBC BANK, USA, AS
TRUSTEE'S MOTION FOR SUMMARY JUDGMENT - 8

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 3100
SEATTLE, WASHINGTON 98101
(206) 622-3790

1  Inputs; (2) Appraisal Report; (3) Payment History; (4) Fees/Costs Assessed; (5)

2  Beneficiary Declaration; (6) ADOT; and (7) Note.  (*Id.*, Ex. F.)

3      At the May 12, 2015 mediation, Plaintiff was reminded that due to investor

4  guidelines his loan was not eligible for HAMP, but a non-HAMP review could be

5  conducted.  (*Id.*, Ex. G.)  Wells Fargo requested that Plaintiff submit a copy of his

6  driver's license, utility bill, and home owner's insurance.  (*Id.*)  A follow-up

7  mediation session was scheduled for July 20, 2015.  (*Id.*, Ex. H.)

8      Plaintiff failed to submit the requested documents within the timeframe; thus,

9  the mediation was rescheduled.  (MH Decl., Ex. I.)  The Mediator reminded Plaintiff

10  that "as [she] has already stated, it is not unusual for more docs. to be requested

11  during the review process.  If the documents are not submitted [she] will certify and

12  close the case with Mr. Adrain being in lack of good faith."  (*Id.*, Ex. N.)

13      In a letter dated September 18, 2015, Plaintiff was offered a Trial Payment

14  Plan ("TPP").  (Deal Decl., Ex. 17.)  Under the TPP, Plaintiff was to make three pay-

15  ments to Wells Fargo, totaling $112,875.52 which would reduce the amount of his

16  delinquency.  (*Id.*)  The Mediator questioned the amount of the first payment due,

17  which was $102,972.62.  (MH Decl., Ex. J.)  Counsel for the beneficiary explained

18  that "this investor has limitations on allowable modifications…and does not allow

19  capitalization or increase in the principal balance of loans…the investor also does

20  not allow principal forgiveness."  (*Id.*, Ex. K.)  A copy of the investor restrictions

21  was provided to the Mediator and counsel for Plaintiff.  (*Id.*)  It was also explained

22  that regardless of any restrictions, Plaintiff "would not be eligible for a HAMP

23  modification," as his "current payment is less than 25% of [his] monthly income,"

Case No.:  2:16-CV-00142-SAB
WELLS FARGO AND HSBC BANK, USA, AS
TRUSTEE'S MOTION FOR SUMMARY JUDGMENT - 9

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 3100
SEATTLE, WASHINGTON 98101
(206) 622-3790

and the payment is "considered affordable under all industry standard modifications including HAMP." (*Id.*)

On November 6, 2015, the Mediator certified that all parties mediated in good faith and no resolution was reached. (*Id.*, Ex. M.)

**K.    The Foreclosure Process Resumes.**

On December 30, 2015, QLS recorded a Notice of Trustee's Sale scheduling a foreclosure sale for May 6, 2016. (QLS Decl, Ex. E.)

**L.    Plaintiff *Again* Reiterates his Ability to Pay and Declares his Lack of Interest in Retaining the Property.**

On February 1, 2016, after foreclosure proceedings re-commenced, on a recorded call with Wells Fargo, Plaintiff expressed his lack of interest in retaining the Property, reiterated his ability to pay under the terms of the Loan, and informed Wells Fargo that he was not concerned about his credit.

| 02/01/2016 | "you guys can go ahead and sell [the Property] and enjoy it and take a bath…" |
|---|---|
| (Deal Decl., Ex. 18.) | "I've got money set aside, but I'm not paying an unreasonable interest rate.  I've been trying to get a refinance" |
| | "If you don't want to take as big a bath, if you want to work something out with me, then work something out, which means a reasonable interest rate and try to do something about the principal, and if you can't do that, then Wells Fargo needs to take a big bath on it and I won't lose any sleep." |
| | "I don't care about my credit, that's meaningless to me, I have cash." |
| | "So all the money I haven't been making in payments I've set aside in cash…" |

Case No.:  2:16-CV-00142-SAB
WELLS FARGO AND HSBC BANK, USA, AS
TRUSTEE'S MOTION FOR SUMMARY JUDGMENT - 10

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 3100
SEATTLE, WASHINGTON 98101
(206) 622-3790

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**M.**    **Plaintiff Files This Action and Obtains an Injunction**.

On April 1, 2016, Plaintiff filed a "Complaint for Damages and Injunctive Relief" in Spokane County Superior Court, Case No. 16-2-01225-1.

### III.    AUTHORITY

**A.**    **Legal Standard for Summary Judgment**.

Summary judgment dismissal is appropriate for any claim that fails as a matter of law under undisputed material facts.  FRCP 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FRCP 56(a).

To defeat summary judgment, the non-moving party must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Summary judgment is required against a party who fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual disputes regarding other elements of the claim.  *Celotex*, 477 U.S. at 322-23.

**B.**    **The Home Affordability Modification Program**.

The Home Affordable Modification Program ("HAMP") was created in February 2009.  Servicers of non-GSE mortgages could participate in the program by executing a servicer participation agreement.  By participating, "servicers are required to consider all eligible mortgage loans unless prohibited by the rules of

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 3100
SEATTLE, WASHINGTON 98101
(206) 622-3790

the applicable [pooling and servicing agreement] and/or other investor servicing agreements." To assist servicers, the United States Department of the Treasury created guidelines which define the class of eligible borrowers. Servicers, however, are not required to modify a loan if prohibited by the investor. (Holder Decl., Ex. B.)

### C.    The Washington Foreclosure Fairness Act.

In 2011, Washington enacted the Foreclosure Fairness Act ("FFA"). The FFA was designed to facilitate conversations, through the use of a mediator, between the homeowner facing foreclosure and the lender to explore alternatives to foreclosure. *See* Notes following RCW 61.24.005. The pre-foreclosure mediation process is governed solely by RCW 61.24 *et seq.* Following mediation, the mediator is required to issue a certificate stating whether a resolution was reached and whether the parties attended the mediation in good faith. (*See* RCW 61.24.163(12)(c), (d).)

The FFA provides no direct private right of action for an alleged failure to participate in mediation in good faith; however, a homeowner can challenge a non-judicial foreclosure as a result of a mediator's certification that the lender participated in bad faith. (*See* RCW 61.24.163, *generally*.) The Act does not provide a method for a homeowner to challenge a mediator's certification that the lender participated in good faith, and no reported case has allowed such a challenge.

### D.    Plaintiff's CPA Claim Must be Dismissed with Prejudice.

Plaintiff's complaint fails to identify the alleged acts he claims to be unfair

Case No.: 2:16-CV-00142-SAB
WELLS FARGO AND HSBC BANK, USA, AS
TRUSTEE'S MOTION FOR SUMMARY JUDGMENT - 12

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 3100
SEATTLE, WASHINGTON 98101
(206) 622-3790

or deceptive and purportedly in violation of the CPA. Thus, each alleged act Plaintiff complains of will be addressed.

For Plaintiff's CPA claim to survive summary judgment, he must establish the following elements: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that impacts the public interest; (4) causes injury to Plaintiff's business or property; and (5) that injury is causally linked to the unfair or deceptive act. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986). Failure to establish any single element is fatal to the claim. *See Hangman Ridge*, 105 Wn.2d at 793 ("[P]rivate CPA plaintiffs must establish all five elements . . . ."; *see also Johnson v. Camp Auto., Inc.*, 148 Wn. App. 181, 185 (2009) ("The failure to establish any of the elements is fatal to a CPA claim."). Plaintiff cannot establish the required elements and his claim fails on summary judgment.

### 1. **Plaintiff Cannot Show an Unfair or Deceptive Act or Practice.**

The terms "unfair" and "deceptive" are not defined by the statute; however, "[i]mplicit in the definition of 'deceptive' under the CPA is the understanding that the practice misleads or misrepresents something of material importance." *Holiday Resort Comm. Ass'n v. Echo Lake Assoc., LLC*, 134 Wn. App. 210, 226 (2006). Furthermore, an unfair or deceptive act or practice is one that "has the capacity to deceive a substantial portion of the public." *Hangman*, 105 Wn.2d at 785. Plaintiff's allegations focus entirely on (1) his communications with Wells Fargo in seeking to refinance his Loan and later to obtain a modification, and (2) Wells Fargo's alleged bad faith participation in mediation, which the mediator certified

1    as good faith.

2           a)      **Plaintiff's Personal Communications have no Capacity to Deceive the Public.**

3

4           Plaintiff's personal communications about his private loan have no capacity

5    to deceive a substantial portion of the public. *Ringler v. Bishop White Marshall &*

6    *Weibel*, 2013 U.S. Dist. LEXIS 60929, at *7-8 (W.D. Wash. Apr. 29, 2013)

7    (dismissing CPA claim based on denial of loan modification where Plaintiff failed

8    to allege any facts to suggest negotiations had the capacity to deceive a substantial

9    portion of the public); *Potter v. Gen. Elec. Capital*, 2014 U.S. Dist. LEXIS 13289,

10   at *12-13 (W.D. Wash. Feb. 3, 2014 (same); *see also Kullman v. N.W. Tr. Servs.,*

11   *Inc.*, 2012 U.S. Dist. LEXIS 16738, at *5-6 (W.D. Wash. Nov. 26, 2012)

12   (summarily dismissing CPA claim where "Complaint makes clear that Bank of

13   America reviewed their application for a loan modification, but rejected it.  There

14   is nothing improper alleged.").

15          Moreover, Defendants did not engage in conduct that was unfair or deceptive.

16   Indeed, as early as April 2012, Wells Fargo clearly informed Plaintiff that the

17   investor to his Loan did not participate in HAMP, and due to investor guidelines, the

18   interest rate on his loan could not be permanently reduced nor could Wells Fargo

19   reduce his principal balance.  Wells Fargo was transparent with Plaintiff.  Indeed,

20   Wells Fargo notified Plaintiff that HAMP was not available to him ***seven months***

21   before his intentional default.   Despite this notification, Plaintiff continued his

22   demands for modified loan terms.  Plaintiff's own actions, and certainly his threats,

23   cannot reasonably create liability on the part of Wells Fargo, or any other Defendant.

Case No.:  2:16-CV-00142-SAB
WELLS FARGO AND HSBC BANK, USA, AS
TRUSTEE'S MOTION FOR SUMMARY JUDGMENT - 14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**b)** **Plaintiff Cannot Show the Mediator's Certification was Incorrect.**

The mediator certified that Wells Fargo participated in the FFA mediation in good faith.  Plaintiff, therefore, must show that the mediator "was biased or otherwise engaged in some act that undermines the veracity of [her] certification," which he cannot do.  *Sergeant v. Bank of Am., N.A.*, 2018 U.S. Dist. LEXIS 47568 *10 (W.D. Wash. Mar. 23, 2018).

Plaintiff has made no allegations which undermine the veracity of the mediator's certificate.  Furthermore, despite Plaintiff's allegations to the contrary, Wells Fargo provided the statutory disclosures to Plaintiff, reviewed Plaintiff for a loan modification, offered Plaintiff a TPP, and explained, again, why another type of modification could not be offered.  While Plaintiff may not have liked the outcome of the mediation, it does not mean Wells Fargo participated in bad faith.  The FFA is not a procedure that guarantees borrowers will obtain a loan modification, and the fact that a borrower was not offered a desired loan modification does not warrant a bad faith certification.  Wells Fargo complied with the FFA and the mediator's certification is correct.

**2.**     **Plaintiff Cannot Show a Public Impact.**

The "purpose of the Consumer Protection Act [is] to protect the public from acts or practices which are injurious to consumers and not to provide an additional remedy for private wrongs which do not affect the public generally."  *Lightfoot v. MacDonald*, 86 Wn.2d 331, 333 (1976).  "Ordinarily, a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest."  *Hangman*, 105 Wn.2d at 790.  It is only the "likelihood that

Case No.:  2:16-CV-00142-SAB
WELLS FARGO AND HSBC BANK, USA, AS
TRUSTEE'S MOTION FOR SUMMARY JUDGMENT - 15

additional plaintiffs have been or will be injured *in exactly the same fashion* that changes a factual pattern from a private dispute to one that affects the public interest." *Id* (emphasis added). Plaintiff must show "a real and substantial potential for repetition, as opposed to a hypothetical possibility of an isolated unfair or deceptive act's being repeated." *Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 604-05 (2009) (internal quotation and citation omitted). Moreover, a "private plaintiff must show that his lawsuit would serve the public interest." *Id*. at 605.

Plaintiff's CPA claim focuses on the private transactions between himself and Wells Fargo concerning Plaintiff's home loan, which is insufficient to support a CPA claim. *Ringler*, 2013 U.S. Dist. LEXIS 60929, at *8 (allegations of unfair or deceptive acts between private parties are not sufficient for a CPA claim). In *Ringler*, the plaintiffs-borrowers alleged that the defendants "engaged in a deceptive act in violation of the CPA…when they denied [the plaintiffs'] requests for a loan modification or short sale." *Id* at *7. On defendants' motion to dismiss, the court found that the plaintiffs "failed to allege facts that would show [the defendants'] act or practice has the capacity to deceive a substantial portion of the public." *Id*. at *8. Instead, the plaintiffs "only allege[d] that [the defendants] denied their individual requests for a loan modification or short sale." *Id*. The court held that "[t]o infer this act had the capacity to deceive a substantial portion of the public is unreasonable." *Id*. Accordingly, the court held plaintiffs' CPA claim failed as a matter of law. *Id*.

As discussed in *Ringler*, private services or contracts between two parties do not implicate the public interest. *Id*. Other courts have ruled likewise. *E.g.,*

Case No.:  2:16-CV-00142-SAB
WELLS FARGO AND HSBC BANK, USA, AS
TRUSTEE'S MOTION FOR SUMMARY JUDGMENT - 16

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 3100
SEATTLE, WASHINGTON 98101
(206) 622-3790

1   *McCrorey v. Fed. Nat'l Mortg. Ass'n*, 2013 U.S. Dist. LEXIS 25461, at *11-12 n.4

2   (W.D. Wash. Feb. 25, 2013) ("To the extent plaintiffs are asserting a CPA claim

3   based on Flagstar's breach of a promise to modify the loan and Nationstar's

4   unwillingness to honor Flagstar's commitment…, there are no facts from which

5   one could infer that this lamentable situation affects the public interest.").

6   The reasoning of these cases applies here.  Plaintiff alleges that Wells Fargo

7   committed unfair or deceptive acts or practices when it did not refinance his Loan.

8   The undisputed facts demonstrate that Plaintiff simply wanted a better deal.

9   Although he repeatedly admitted that he was not suffering a financial hardship,

10  Plaintiff was plainly frustrated by his inability to obtain a lower interest rate and

11  reduced principal balance, so he intentionally defaulted on his Loan in hopes that it

12  would force Wells Fargo and/or HSBC into providing him what he wanted.  Not

13  only do the facts show that Plaintiff's own conduct placed him in the position he is

14  in today, but also that the allegations relate solely to private services and contracts

15  between private parties.  Indeed, in response to Wells Fargo and HSBC's interroga-

16  tory to identify how the alleged acts or practices affected the public interest, Plaintiff

17  merely answered that "Defendants engage in this same pattern and practice of

18  conduct in handling mortgages."  (Holder Decl., Ex. A.)  In response to the related

19  request for production, Plaintiff produced ***no document*** to show how the alleged acts

20  or practices affect the public interest.  (Holder Decl., ¶ 2.)  Plaintiff cannot rely on

21  speculation or argumentative assertions to survive summary judgment.  *Kirby*, 124

22  Wn. App. at 463-64.

23

Case No.:  2:16-CV-00142-SAB
WELLS FARGO AND HSBC BANK, USA, AS
TRUSTEE'S MOTION FOR SUMMARY JUDGMENT - 17

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 3100
SEATTLE, WASHINGTON 98101
(206) 622-3790

### 3.    Plaintiff Cannot Prove an Injury Caused by Defendants.

Plaintiff's CPA claim also fails because he lacks specific material facts to establish a cognizable injury that was caused by Defendants' conduct.  The "injury" element of a CPA claim requires a "specific showing of injury" to Plaintiff's "business or property."  *Hangman*, 105 Wn.2d at 792.  "The injury involved need not be great, but it must be established."  *Id*.  "Personal injuries, as opposed to injuries to 'business or property,' are not compensable and do not satisfy the injury requirement.  Thus, damages for mental distress, embarrassment, and inconvenience are not recoverable under the CPA."  *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 57 (2009).  Neither are costs associated with instituting a CPA action.  *Panag*, 166 Wn.2d at 62.

Plaintiff alleges that he has suffered damages because foreclosure proceedings commenced when he was not actually in default.  This allegation is demonstrably false.  Plaintiff defaulted in November 2012.  Foreclosure commenced in March 2015.  Moreover, Plaintiff made numerous statements in recorded calls with Wells Fargo confirming he was in default and foreclosure was imminent.  Indeed, Plaintiff even encouraged Wells Fargo, on numerous occasions, to commence foreclosure and "take it in the shorts."

Regardless, Plaintiff cannot establish compensable damages.  Indeed, despite the requirement of Fed. R. Civ. P. 26(A)(1)(A)(iii) to "make available…the documents or other evidentiary material…on which each computation [of damages] is based," Plaintiff provided no documents.  Plaintiff claims, without any support, that his property has been reduced in value as a result of the foreclosure proceed-

Case No.:  2:16-CV-00142-SAB
WELLS FARGO AND HSBC BANK, USA, AS
TRUSTEE'S MOTION FOR SUMMARY JUDGMENT - 18

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 3100
SEATTLE, WASHINGTON 98101
(206) 622-3790

ings, which were commenced as a result of Plaintiff's intentional default and own urging, and that he lost the ability to sell the property at fair market value. These "categories" of damages are duplicative, and Plaintiff has no evidence to substantiate any compensable damages.

However, even if this Court finds that Plaintiff has sufficient evidence in support of his claimed damages, Plaintiff has no evidence that the alleged damages were caused by Defendants' conduct. The causation element of the CPA claim requires Plaintiff to "establish that, but for [the Defendants' alleged acts, Plaintiff] would not have suffered any injury." *Indoor Billboard, Inc. v. Integra Telecom of Wash.*, 162 Wn.2d 59, 83-84 (2007).

Here, Plaintiff's alleged injuries relate to the fair market value of the Property and allegations that he's been unable to sell it on the market because of the recorded Notice of Trustee's Sale. To the extent Plaintiff can substantiate these alleged damages, they were caused by Plaintiff's own intentional default. Plaintiff declared, on numerous occasions, that he was going to stop making payments on the Loan—i.e., default. Additionally, Plaintiff also stated, numerous times, that he could afford to keep making his mortgage payments and even after he had stopped paying on the Loan, he represented to Wells Fargo that he had been putting aside each of his monthly mortgage payments. Plaintiff sought an interest rate that was more in line with then-current rates and he was unhappy about the decline in the real estate market. However, Plaintiff's intentional default on his Loan to force Wells Fargo into offering him better loan terms, and the alleged unsupported damages he suffered as a result of his own acts, are wholly insufficient to sustain a

Case No.:  2:16-CV-00142-SAB
WELLS FARGO AND HSBC BANK, USA, AS
TRUSTEE'S MOTION FOR SUMMARY JUDGMENT - 19

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 3100
SEATTLE, WASHINGTON 98101
(206) 622-3790

claim under the CPA.  Indeed, "[a]ny injuries associated with the foreclosure proceedings, including…'damage to [his] credit,' and the alleged 'loss of any equity in [his] home…' were caused solely by [his] own decision to default." *Massey*, 2013 U.S. Dist. LEXIS 180472, at *22-23 (W.D. Wash. Dec. 23, 2013); *citing Babrauskas v. Paramount Equity Mortg.*, 2013 U.S. Dist. LEXIS 152561, at *4 (W.D. Wash. Oct. 23, 2013) (holding no injury under the CPA because "plaintiff's failure to meet his debt obligations is the 'but for' cause of the default, the threat of foreclosure, any adverse impact on his credit, and the clouded title"); *McCrorey*, 2013 U.S. Dist. LEXIS 25461, at *11 (holding no injury under the CPA because "it was [plaintiffs'] failure to meet their debt obligations that led to a default, the destruction of credit, and the foreclosure").

### E.    Plaintiff's Negligent Misrepresentation Claim Must Be Dismissed.

Plaintiff must prove by clear, cogent, and convincing evidence that (1) Defendants supplied false information to guide Plaintiff in his business transactions, (2) Defendants knew or should have known the information was to guide Plaintiff, (3) the Defendants were negligent, (4) Plaintiff relied on the false information, (5) Plaintiff's reliance was reasonable, and (6) the false information proximately caused Plaintiff damages. *Austin v. Ettl*, 171 Wn.App. 82, 88 (2012).

Plaintiff cannot establish any element to this claim because Defendants did not provide any information to Plaintiff for use in his business transactions.  Plaintiff communicated with Wells Fargo regarding the terms of his residential home mortgage.  This relationship was not tied to Plaintiff's business and not relied on by Plaintiff in his business transactions.  Regardless, Plaintiff alleges that Defendants

Case No.:  2:16-CV-00142-SAB
WELLS FARGO AND HSBC BANK, USA, AS
TRUSTEE'S MOTION FOR SUMMARY JUDGMENT - 20

misrepresented their ability to foreclose where there allegedly had been no default on the Loan.  (ECF No. 1-2, ¶ 49.)  Plaintiff was in default.  This is made clear by Plaintiff's payment history, which shows that he failed to make the monthly payment in November 2012, and each subsequent month thereafter until April 15, 2016, when he obtained the injunction in this case and began making payments to the Court registry.  The Note and DOT provide Defendants with the contractual authority to commence foreclosure upon Plaintiff's failure to pay under the terms of the Loan.  Plaintiff identifies no other alleged misrepresentations made to him by Defendants.  Plaintiff lacks clear, cogent, and convincing evidence that Defendants provided any false information to Plaintiff.  Therefore, Plaintiff's negligent misrepresentation claim fails.

## IV.   CONCLUSION

For the foregoing reasons, Wells Fargo and HSBC Bank, USA as Trustee respectfully request that this Court dismiss Plaintiff's complaint with prejudice.

DATED this 18th day of July, 2018.

/s/ Valerie I. Holder
**Valerie I. Holder, WSBA No. 42968**
Attorney for Defendants
Wells Fargo Bank, N.A. and
HSBC Bank, USA, National Association as
Trustee for Wells Fargo Asset Securities
Corporation Mortgage Pass-Through
Certificates Series 2007-11
Keesal, Young & Logan
1301 Fifth Avenue, Suite 3100
Seattle, Washington  98101
Telephone:     (206) 622-3790
Facsimile:      (206) 343-9529
E-mail:         valerie.holder@kyl.com

Case No.:  2:16-CV-00142-SAB
WELLS FARGO AND HSBC BANK, USA, AS
TRUSTEE'S MOTION FOR SUMMARY JUDGMENT - 21

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 3100
SEATTLE, WASHINGTON  98101
(206) 622-3790

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on the date given below, I electronically filed the

3  foregoing WELLS FARGO AND HSBC BANK, USA, AS TRUSTEE'S

4  MOTION FOR SUMMARY JUDGMENT with the Clerk of the Court using the

5  CM/ECF system which will send electronic notification of such filing to the

6  following persons:

7  Kevin Roberts
   Roberts Freebourn, PLLC
8  1325 W. 1st Ave., Ste 303
   Spokane, WA  99201-4600
9
   Counsel for Plaintiff
10

11     DATED this 18th day of July, 2018, at Seattle, Washington.

12

13

14  _____
    Marcee Stone-Vekich
15
    KYL4838-3449-9404.2
16

17

18

19

20

21

22

23

Case No.:  2:16-CV-00142-SAB
WELLS FARGO AND HSBC BANK, USA, AS
TRUSTEE'S MOTION FOR SUMMARY JUDGMENT- 22