KEVIN W. ROBERTS, WSBA #29743
STEPHANIE M. FAUST, WSBA #52751
ROBERTS | FREEBOURN, PLLC
1325 W. 1st Ave. Ste. 303
Spokane, WA 99201
Telephone: (509) 381-5262
Facsimile: (509) 473-9026

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOHN ADRAIN, an individual,<br><br>         Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A., a foreign Corporation; QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, INC. a Washington corporation; and HSBC BANK USA, N.A., a Maryland corporation,<br><br>         Defendants. | Case No.: 2:16-cv-00142-SAB<br><br>PLAINTIFF JOHN ADRAIN'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

## I.    __INTRODUCTION__

Plaintiff Adrain requests Defendants' Motion for Summary Judgment be denied. Genuine issues of material fact exist requiring a trial in this matter. The facts and evidence in this matter show Wells Fargo engaged in unfair business

practices violating Washington's Consumer Protection Act. Wells Fargo did not participate in mediation with good faith and wrongfully prevented Adrain from participating in the Home Affordable Modification Program.

## II. RELEVANT FACTS

1. On June 14, 2007, Plaintiff Adrain purchased his residence located at 3510 N. Indian Bluff Road, Spokane Washington for $815,000.[1]

2. Adrain bought his home with the assistance of a home loan from Wells Fargo, N.A. ("Wells Fargo") in the amount of $652,000 with a 6.625 percent interest rate.

3. Adrain's monthly mortgage payment for the House is $4,200. SOF ¶ 3.

4. At the time Adrain purchased his House and accepted the $4,200 monthly mortgage payment, he was married, and received income from his patents and also received a salary from his employment. SOF ¶¶ 4-5.

5. In late 2007, Adrain became unemployed, and in 2010 Adrain and his wife divorced, and Adrain was responsible for a $6,760 monthly spousal maintenance and child support payment. SOF ¶¶ 6, 8-9.

6. In 2011, after Adrain's job loss and divorce, Adrain began working with Wells Fargo to refinance or renegotiate the terms of his loan because he was

---

[1] See Plaintiff's Statement of Facts ("SOF") filed herewith ¶ 1.

PLAINTIFF ADRAIN'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 2

hemorrhaging money and could not make his mortgage payments. SOF ¶ 10.

7. Adrain was given misleading information regarding his ability to qualify for the Home Affordable Modification Program ("HAMP") and was often informed that an investor in his loan was not a HAMP participant. SOF ¶¶ 13, 15, 17.

8. After a year of trying to work with Wells Fargo and avoid defaulting on his mortgage, Adrain could no longer afford his payments and stopped making his monthly mortgage payments to Wells Fargo in November of 2012. SOF ¶ 16.

9. Adrain continued to try to negotiate with Wells Fargo to come to an agreement where he could keep his home and make a more manageable monthly mortgage payment. See generally, SOF.

10. However, Wells Fargo refused to negotiate with Adrain and instead requested and re-requested duplicative and identical documentation which Adrain had previously submitted. SOF ¶¶ 19, 31-32, 34, 36, 39-40, 52, 59, 62, 65-66.

11. On March 12, 2015, Adrain was referred to foreclosure mediation. SOF ¶ 49.

12. Adrain sent Wells Fargo the documentation as required by RCW 64.24.163, which governs the mediation timeline, requirements, duties, and responsibilities of the parties who are accepted into foreclosure mediation under the Washington Foreclosure Fairness Act. SOF ¶¶ 52-55.

13.     When mediation occurred Wells Fargo was unprepared, and the scheduled mediation was used as a "review" session. SOF ¶ 56.

14.     Wells Fargo falsely claimed Adrain had not sent them the required or requested information. SOF ¶¶ 52-55, 56.

15.     Wells Fargo repeated this pattern of requesting documentation, Adrain sent the documentation, Wells Fargo would re-request the documentation, Adrian would re-send the documentation, then Wells Fargo postponed two additional mediation sessions without good cause. SOF ¶¶ 57-62, 65-66.

16.     Throughout the six-month mediation process, Wells Fargo refused to disclose their required documentation. Dec. of Faust ¶ 49; Ex. XX.

17.     Mediation finally occurred on November 4, 2015, however no agreement was reached because Wells Fargo's representatives refused to negotiate with Adrain or his attorneys. SOF ¶¶ 71-72.

18.     On December 16, 2015, Adrain received a notification of a Trustee's Sale, scheduling the sale for May 6, 2016. SOF ¶ 77.

19.     On April 1, 2016, Adrain sought a preliminary injunction to restrain the sale of his home.

20.     Adrain's preliminary injunction was granted on April 15, 2016, and the court required Adrain make monthly payments of $4,176.83 to the court registry in order to keep his preliminary injunction active through litigation.

# III. DISCUSSION

## A. Standard of Review

Fed. R. Civ. P. 56(a) states that *"[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."* The party seeking summary judgment has the burden of showing that there is an absence of a genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law by *"pointing out"* to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 1335-1336 (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986)). *"[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."* <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 258 (1986). The court must consider all evidence and resolve all reasonable inferences from the evidence against the moving party and in the light most favorable to the nonmoving party. <u>Morris v. McNicol</u>, 83 Wash.2d 491, 495 (1974).

Drawing all reasonable inferences from the evidence in favor of Plaintiff Adrain, he has come forward with evidence showing that a reasonable jury could return a verdict in his favor. Defendant Wells Fargo has failed to meet its high burden of showing no genuine issue of material fact exists. Summary Judgment as requested by Wells Fargo is not warranted and should be denied.

**B. DEFENDANTS VIOLATED THE WASHINGTON CONSUMER PROTECTION ACT BY ENGAGING IN UNFAIR PRACTICES.**

Washington's Consumer Protection Act is violated by:

*(1) an unfair **or** deceptive act or practice; (2) occurring in trade or commerce; (3) that impacts the public interest; (4) causes injury to Plaintiff's business or property; and (5) that injury is causally linked to the unfair or deceptive act.*

Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn. 778, 780 (1986) (emphasis added).

### 1. Defendant's Actions Were Unfair or Deceptive.

    a. Defendant Did Not Participate in Foreclosure Mediation with Good Faith.

RCW 61.24.163 describes the foreclosure mediation program under the Washington Foreclosure Fairness Act, where eligible borrowers in default of their mortgage loans may qualify to mediate the defaulted loan with the beneficiary prior to foreclosure proceedings. The statute requires the parties to mediate in good faith and for the mediator to certify in writing if the parties mediated in good faith. RCW 61.24.163(7)(b)(iii), (12)(d). Here, the facts establish that regardless of the certification, Wells Fargo did not actually participate in the mediation in any meaningful way. Therefore, Wells Fargo did not mediate in good faith as required.

The statute also states that mediation participants must address the issues of foreclosure which may allow the borrower and the beneficiary to reach a resolution. RCW 61.24.163. This includes modifying the loan, restructuring the debt, or

another plan. Id. Some of the factors that should be considered are the borrower's current and future economic circumstances and net present value of payments under a modified mortgage loan compared to foreclosure recovery. RCW 61.24.163(9).

A violation of the duty to mediate in good faith may include: failure to timely participate in mediation without good cause; failure to provide documentation before mediation or pursuant to the mediator's instructions; and failure to designate representatives with authority to reach a resolution with the borrower in mediation. RCW 61.24.163(10)(a)-(c). In order for a plaintiff to prevail on an allegation that a party did not mediate in good faith, the plaintiff must provide authority for the allegation and provide a *"plausible argument that this is a reasonable extension of current law."* Sergeant v. Bank of Am., N.A., No. C17-5232 BHS, 2018 WL 1427345, at *4 (W.D. Wash. Mar. 22, 2018).

For example, in Frias v. Asset Foreclosure Services, Inc., the plaintiff, was able to make a plausible argument that U.S. Bank failed to mediate in good faith because U.S. Bank failed to appear at the first mediation, which necessitated rescheduling the mediation. 181 Wash. 2d 412, 432 (2014). At the second mediation, U.S. Bank was not prepared to mediate. Id. The Washington Supreme Court found that U.S. Bank's failure to prepare and mediate in good faith caused Frias to incur increased expenses for the additional mediation session which could be a compensable injury. Id. This is unlike the plaintiffs in Sergeant, who were

PLAINTIFF ADRAIN'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 7

unable provide a *"plausible argument"* that the mediator was *"biased or otherwise engaged in some act that undermines the veracity of his certification..."* <u>Sergeant v. Bank of Am., N.A.</u>, No. C17-5232 BHS, 2018 WL 1427345, at *4 (W.D. Wash. Mar. 22, 2018).

The facts of the present case are similar to <u>Frias</u> because Wells Fargo came to mediation unprepared and postponed mediation two times before the case was mediated on November 4, 2015. SOF ¶¶ 52, 60, 66, 71. This despite the fact that Adrain provided Wells Fargo necessary documents repeatedly prior to scheduled mediation. In contrast, Wells Fargo never provided the documents to Adrain that are required by the Washington Foreclosure Fairness Act. Furthermore, Adrain has a *"plausible argument"* that the mediator in the case was biased and that bias affected her ability to issue a neutral decision. After Adrain received notification on March 12, 2015, that his case was referred to mediation, Adrain submitted the requested documents to Wells Fargo. SOF ¶¶ 49, 52-53, 55; Declaration of Adrain ("Dec. of Adrain") 34. At mediation on May 15, 2015, Wells Fargo claimed they could not proceed because Adrain did not send them the requested documentation. SOF ¶ 56. Throughout the modification process, Adrain had send every document Wells Fargo requested in a timely manner. Dec. of Adrain ¶ 94. The only instance where Adrain needed an extension for a deadline from Wells Fargo was when Adrain experienced a delay in receiving his 2014 tax return information. SOF ¶ 57;

PLAINTIFF ADRAIN'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 8

Dec. of Adrain ¶¶ 39. While Adrain was waiting for his tax information, Adrain's attorney, Robert Redmond, kept Wells Fargo informed of any changes or updated information he and Adrain received. Id.

Wells Fargo requested additional documentation on July 6, 2015. SOF ¶ 59. The letter Wells Fargo sent Adrain was identical to the request it made in March of 2015. SOF ¶ 52, 59. Even though Adrain had previously sent the requested information, he resubmitted the requested documentation. Dec. of Adrain ¶¶ 84, 85, SOF ¶¶ 58-59. Wells Fargo postponed the July 20, 2015, mediation, again claiming Adrain did not send the requested documentation. SOF ¶ 60. Mediation was scheduled for September 2, 2015. SOF ¶ 61. Wells Fargo requested documentation, much of which Adrain had previously submitted, and Adrain complied. SOF ¶ 62, , 65. Once again, Wells Fargo claimed Adrain did not send the required information and rescheduled the September 2, 2015, mediation. SOF ¶ 66. Adrain's attorney, Kevin Roberts, noted Ms. Pehlke's bias more than two months prior to when mediation finally took place,

> *In the event the mediation (if it ever occurs) fails, I want you to issue a not in good faith mediation certificate against Wells Fargo. The manner in which they have treated my client and wasted his time violates both the Federal and State laws. As I indicated before, up to this point it appears that you lost your perspective and have refused to do anything beyond support Wells Fargo's failures to comply with their obligations. That needs to end. I want this baseless delay by Wells Fargo documented in your file.*

PLAINTIFF ADRAIN'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 9

Dec. of Faust ¶ 49; Ex. XX.

Nearly six months after the original mediation date, including one mediation when Wells Fargo was unprepared and two postponed mediations, mediation finally occurred on November 4, 2015. SOF ¶ 71. During mediation, the mediator, Ms. Pehlke, was very friendly with the Wells Fargo representatives. SOF ¶ 73. It appeared that Pehlke was acting in the best interests of Wells Fargo, rather than acting as a neutral third-party who was supposed to be facilitating an agreement between Adrain and Wells Fargo. Id.

During mediation Wells Fargo refused to negotiate or even discuss the outstanding debt Adrain owed on his mortgage. SOF ¶ 71; Dec. of Faust ¶ 53. Wells Fargo did not try to negotiate a single penny. Dec of Faust ¶ 53. The combination of the familiarity between Wells Fargo's representatives and Pehlke; Wells Fargo's unpreparedness for the first mediation; Wells Fargo's multiple mediation rescheduling; and Wells Fargo's refusal to negotiate during mediation should have led to Pehlke certifying that Wells Fargo did not mediate in good faith. Instead, Pehlke certified that both parties mediated in good faith. Dec. of Adrain ¶ 124; Dec. of Faust ¶ 53; Ex. BBB. The facts support a certification of "bad faith" on the part of Wells Fargo and both Frias and Sergent would have supported this certification because Adrain has made plausible arguments that the mediator was biased, and it affected her ability to certify the mediation.

Wells Fargo did not mediate in good faith and their motion for summary judgment should be denied.

> b. Wells Fargo Engaged in an Unfair Practice by its Stalling, Misdirection and Consistent Requests for Duplicative Documents.

Beginning in 2011, Wells Fargo engaged in unfair practices by repeatedly and consistently requesting duplicative information from Adrain. See generally, Dec. of Adrain. Robert Redmond, one of Adrain's attorneys, contacted Wells Fargo numerous times explaining that Wells Fargo's process was difficult and cumbersome, and how frustrating it was for Wells Fargo to continue to request the same documentation Adrain had previously submitted. SOF ¶ 19. Despite written correspondence from Redmond, requesting specific and detailed requests for information Wells Fargo needed from Adrain, Wells Fargo continued to engage in its practice of requesting and re-requesting identical and duplicative information, sometimes re-requesting identical documents just three months after its initial request. SOF ¶¶ 11, 22, 39, 59.

Wells Fargo also engaged in deceptive practices or acts. On June 27, 2012, Adrain received a call from "Martin," a Wells Fargo employee who called Adrain and informed him that *things have changed* since he was reviewed and denied for HAMP in April of 2012. ECF No. 74-8. "Martin" claimed Adrain not qualified for HAMP and directed Adrain to resubmit a HAMP packet for consideration. Id. In reality, this was another delay tactic used by Wells Fargo.

Furthermore, despite Wells Fargo indicating that Adrain was eligible for HAMP, which would mean his loan could not be in default without that process being completed, Adrain was not eligible. SOF ¶ 15. Wells Fargo's collection letters and telephone calls were so unrelenting and pervasive that in 2013, Mr. Redmond sent Wells Fargo a cease and desist letter. SOF ¶¶ 27-28. Wells Fargo sent Adrain a letter acknowledging the cease and desist letter it received, but informed Adrain that he was HAMP eligible and if he wanted to learn more about HAMP and enrolling in the program, Adrain would need to authorize Wells Fargo to resume contact with him. SOF ¶ 29. Adrain authorized Wells Fargo to re-initiate contact with him, but he quickly learned that he was not in fact HAMP eligible like Wells Fargo previously indicated, and the collection calls and letters restarted and have been persistent ever since. SOF ¶ 30.

The facts and evidence show Wells Fargo engaged in deceptive or unfair acts or practices by requesting duplicative and identical documentation and information from Adrain, and by Wells Fargo employees making false statements to Adrain. Therefore, genuine issues of material of fact exist for trial and Wells Fargo's motion for summary judgment should be denied.

  a. Defendant Failed to Provide Adequate Notice of the Sale of the Deed of Trust.

Adrain's Deed of Trust ("DOT") requires that a Borrower receive notice when there are changes to the Security Instrument such as a sale or partial sale of

the Promissory Note ("Note") or when there are changes to the loan servicer unrelated to the sale of the Note. Dec. of Faust ¶ 51; Ex. ZZ. Under the terms of the Note, Wells Fargo was required to give Adrain notice that his DOT was sold. Id. Wells Fargo's first form of "notice" to Adrain was in April of 2012, when Adrain was denied for the Home Affordable Modification Program ("HAMP") because an investor in Adrain's mortgage was not a HAMP participant. Dec. of Adrain ¶ 15; Adrain did not receive any notification regarding this non-HAMP participating investor prior to his denial in April of 2012.

Wells Fargo employees briefly mentioned the non-HAMP participating investor during a phone call on June 27, 2012 and on March 7, 2013, when Marantha Lazaro, a Written Customer Contact, indicated that Wells Fargo *"services its mortgage loans on behalf of secondary market investors"* and *"WFHM [Wells Fargo Home Mortgage] must comply with the home preservation standards of the investor prior to offering any type of workout arrangements to our mortgagors."* ECF No. 74-8; Dec. of Faust ¶ 7, Ex. G. The DOT provides that *"[a]ny notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's address if sent by other means."* Del. of Faust ¶ 51, Ex. ZZZ. The Note does not provide for a time frame for when notice is properly given to the Borrower.

Genuine issues of material fact remain as to the reasonableness and adequacy

of Wells Fargo's notification to Adrain regarding the investor in his DOT. A jury should be allowed to determine whether fleeting mentions of an investor prohibiting enrollment in HAMP qualify as adequate notice. It is also a deceptive act for Wells Fargo to provide a loan which contains the protections of HAMP and then later, without notice, sell it to an investor who refuses to allow HAMP protections to be used.

Additionally, Wells Fargo recorded an Assignment of Deed of Trust on March 16, 2013. Dec. of Faust ¶ 52, Ex. AAA. Adrain did not receive notice of the assignment for another two years, when Wells Fargo provided the single page document to him in preparation for mediation.

Viewing the facts, evidence and inferences therefrom in favor of Adrain, Wells Fargo's motion for summary judgment should be denied.

## 2. Defendant's Acts and Practices Impacts the Public Interest.

Washington courts have held that a deceptive act must have the capacity to deceive a substantial portion of the population[2] and "misleads or misrepresents something of material importance."[3] The Washington Supreme Court also found the public interest element is presumptively met when the bank is involved with an enormous number of mortgages in the country and our state. McCrorey v. Fed. Nat.

---

[2] Sing v. John L. Scott, Inc., 134 Wash.2d 24, 30 (1997)
[3] Holiday Resort Cmty. Ass'n v. Echo Lake Assocs., LLC, 134 Wash.App. 210, 226, (2006)

<u>Mortg. Ass'n</u>, No. C12-1630RSL, 2013 WL 681208, at *3 (W.D. Wash. Feb. 25, 2013)

    a. <u>Determining Whether Public Interest is Implicated is a Question of Fact, Not Law, Meaning a Jury Should Decide Adrain's CPA Claims.</u>

In determining whether there is a public interest in a given action is a question of fact and depends on the context in which the acts were committed. <u>Hangman</u>, 105 Wash. 2d at 790 (1986).

While Defendant correctly points out that in ordinary circumstances, "*a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest.*" <u>Id</u>. (citing <u>Lightfoot v. MacDonald</u>, 86 Wash. 2d 331, 334 (1976)). However, <u>Hangman</u> goes onto state, "*it is the likelihood that additional plaintiffs have been or will be injured in exactly the same fashion that changes a factual pattern from a private dispute to one that affects the public interest.*" <u>Id</u>. (citing <u>McRae v. Bolstad</u>, 101 Wash. 2d 161, 166 (1984)). The conduct described above, is of the type that anyone with a mortgage from Wells Fargo would be injured in the same way. Being shuffled from person to person with no knowledge, being asked repeatedly for the same documentation, participating in required mediation only to have Wells Fargo delay it and not participate in good faith, and being provided a mortgage which is subject to the relief of HAMP only to have it sold without notice to an "investor" who refuses to allow Wells Fargo to provide the relief.

While Adrain's CPA claim against Wells Fargo stems from a private contract, other members of the public may experience or may have already experienced the same damages as Adrain. Wells Fargo issued a Trial Payment Plan ("TPP") to Adrain in October of 2015. SOF ¶ 68. However, the monthly gross income Wells Fargo used as its basis for qualifying Adrain for the TPP was $38,700. Id. In reality, Adrain made a gross income of $12,500 – a difference of over $26,200. Id. Adrain appealed Wells Fargo's proposed TPP and sent documents evidencing his actual earnings. Id; Dec. of Faust ¶ 49; Ex. XX. However, Wells Fargo denied Adrain's appeal. SOF ¶ 68. Following Wells Fargo's TPP denial, on December 16, 2015, Wells Fargo notified Adrain that he no longer met the requirements for mortgage assistance because he denied its TPP offer. SOF ¶ 75.

Wells Fargo erroneously denied Adrain's request for HAMP or refinancing multiple times from 2011-2015. Adrain has requested information about other Wells Fargo customers who may have similar experiences with Wells Fargo and home mortgage modifications, however, Wells Fargo refuses to provide Adrain with any information about other customers who may have experienced similar harm as Adrain. Dec. of Faust ¶ 49, Ex. XX. It has become apparent that there are other Wells Fargo customers who may have experienced the same or similar damages as Adrain after Wells Fargo filed a regulatory filing with the Securities and Exchange Commission on August 3, 2018. In its 10-Q filing, Wells Fargo

disclosed:

> ***Mortgage Loan Modifications:*** *An internal review of the Company's use of a mortgage loan modification underwriting tool identified a calculation error that affected certain accounts that were in the foreclosure process between April 13 2010, and October 20, 2015, when the error was corrected. This error in the modification tool caused an automated miscalculation of attorneys' fees that were included for purposes of determining whether a customer qualified for a mortgage loan modification pursuant to the requirements of...[HAMP]...As a result of this error, **approximately 625 customers were incorrectly denied a loan modification** or were not offered a modification in cases where they would have otherwise qualified. **In approximately 400 of these instances, after the loan modification was denied or the customer was deemed ineligible to be offered a loan modification, a foreclosure was completed.**[4]*

The error Wells Fargo identified was the same error and miscalculation Adrain experienced from 2011 through 2015. See generally, SOF.

Wells Fargo also disclosed numerous pending lawsuits and government investigations. Including class action lawsuits for unfair and deceptive practices, executive officer material misstatements and omissions of information in Wells Fargo's public disclosures;[5] ATM fee overcharges;[6] and

> ***Mortgage Bankruptcy Loan Modification Litigation:*** *This class action dating back to the mortgage crisis alleges that "Wells Fargo improperly and unilaterally modified the mortgages of borrowers who were debtors in Chapter 13 Bankruptcy cases...The amended complaint asserts claims based on, among*

---

[4] United States Securities Exchange Commission, *Form 10-Q* (Aug. 3, 2018) https://www.sec.gov/Archives/edgar/data/72971/000000729711800408/wfc-06302018x10q.htm (last visited Aug. 8, 2018); Dec. of Faust ¶ 55.
[5] Dec. of Faust ¶ 55.
[6] Id.

PLAINTIFF ADRAIN'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 17

*other things, alleged fraud, violations of bankruptcy rules and laws, and unfair and deceptive trade practices.*"[7]

Wells Fargo's practices, including the same practices which damaged Adrain, impacts the public interest because Wells Fargo's acts and practices create a high likelihood that additional plaintiffs have been or will be injured in the same fashion as Adrain. See, Hangman, 105 Wash. 2d at 790. Based on the information Wells Fargo disclosed in their 10-Q report, it is clear that Wells Fargo's behavior and practices are not limited to Adrain and that Wells Fargo has engaged in a pattern of unfair and deceptive practices to many others, including the 625 customers who were wrongly denied for loan modifications. Furthermore, Wells Fargo refused to disclose information about results or instances of prior foreclosure mediation with other Washington customers who were in foreclosure proceedings.

Finally, determining whether a CPA violation may impact a public interest is a question of fact, not law, making a jury an appropriate decision maker in this case.

### 3. Plaintiff was Injured by Defendant's Deceptive Act or Practice.

Compensable injuries under the CPA those that cause "*injury to [the] plaintiff in his or her business or property.*" Hangman, 105 Wash.2d at 780. A plaintiff's injuries may include a "*minimal and temporary*" injury; the plaintiff

---

[7] Id.; see also Wof Richter, *It Just Doesn't Let Up with Wells Fargo*, Wolf Street (Aug. 6, 2018) https://wolfstreet.com/2018/08/06/wells-fargo-rap-sheet-new-investigation-low-income-housing-tax-credits/ (last visited Aug. 7, 2018).

PLAINTIFF ADRAIN'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 18

actually losing title to their home in a foreclosure action; remitting foreclosure fees; and "*other business or property injuries [which] might be caused when a lender or trustee engages in an unfair or deceptive practice in the nonjudicial foreclosure context.*" Frias v. Asset Foreclosure Servs., Inc., 181 Wash. 2d 412, 431 (2014). For example, in Bolone v. Wells Fargo Home Mortg., Inc., the District Court found that the plaintiff suffered an injury after she had to obtain a preliminary injunction to prevent Wells Fargo from evicting her from her home during litigation. 858 F. Supp. 2d 825, 832 (E.D. Mich. 2012).

Wells Fargo has injured Adrain's property by its act or practice. Similar to Bolone, Wells Fargo sent Adrain a Notice of a Trustee's Sale on December 28, 2015. SOF ¶ 77. The Trustee's Sale was scheduled for May 6, 2016. Id. In order to prevent Wells Fargo from wrongfully completing the foreclosure process, Adrain obtained a preliminary injunction. SOF ¶ 78; Dec. of Faust ¶ 56. In order to keep the preliminary injunction active while litigation in this matter is pending, Adrain has been selling his personal property and possessions in order to pay the $4,174.83 monthly court registry payments. SOF ¶ 78.

Adrain has also suffered damages from Wells Fargo due to increased costs for mediation and attorney's fees due to Wells Fargo baselessly postponing mediation multiple times. Dec. of Adrain ¶ 65. Wells Fargo's repeated requests for duplicative documentation has also caused Adrain to incur between $5,500-$6,500

in fees from his bookkeeper and accountant. Id. Wells Fargo has continued to damage Adrain by clouding the title on his home, which inhibits his ability to sell his home and mitigate his damages. Dec. of Faust ¶ 53. Adrain's inability to sell his home has led to an increase in the amount of damages, fees, and interest, including the monthly payment of $4,174.83 associated with Adrain's injunction. Dec. of Faust ¶ 56.

### C. NEGLIGENT MISREPRESENTATION.

A person who commits the tort of negligent misrepresentation is:

> *One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, **supplies false information for the guidance of others** in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.*

Peterson v. Big Bend Ins. Agency, Inc., 150 Wash. App. 504, 518, 202 P.3d 372, 378 (2009), as amended on reconsideration (July 14, 2009) (emphasis in original) "*A supplier of information for the guidance of others must refrain not only from misrepresenting facts but also from communicating accurate information in a way that misleads.*" Dewar v. Smith, 185 Wash. App. 544, 562 (2015) (internal citations omitted).

Negligent misrepresentation has been found when a real estate agent and owner of a property failed to disclose a home was contaminated by a

methamphetamine lab prior to a family purchasing it as their residence. <u>Bloor v.</u>

<u>Fritz</u>, 143 Wash. App. 718, 723, 180 P.3d 805, 810 (2008). Negligent

misrepresentation has also been found in situations involving an insurance company

and its insured, after the insurance company negligently misrepresented the amount

of necessary replacement covers. <u>Peterson</u>, 150 Wash. App. at 509.

Negligent misrepresentation a plaintiff must prove:

> *(1) that a defendant supplied information for the guidance of others in their business transactions that was false, (2) the defendant knew or should have known that the information was supplied to guide the plaintiff in business transactions, (3) the defendant was negligent in obtaining or communicating false information, (4) the plaintiff relief on the false information supplied by the defendant, (5) that the plaintiff reliance on the false information supplied by the defendant was justified, and (6) the false information was the proximate cause of damages to the plaintiff.*

<u>Shepard v. Holmes</u>, 185 Wash. App. 730, 742, n. 2 (2014).

Here, the business transaction was Adrain's attempts to refinance or modify

his existing home loan. The mere fact the business transaction was for the purchase

of a home does not mean that it was not a business transaction. Wells Fargo supplied

false information to Adrain. Wells Fargo knew the information they supplied to

Adrain guided him in his business transaction of trying to refinance or obtain a loan

modification with Wells Fargo. Wells Fargo and its employee negligently

communicated the false information to Adrain. Adrain's reliance on Wells Fargo's

statements was justified because Wells Fargo was supposed to be supplying Adrain

with truthful information he could use in the refinance or loan modification process. Wells Fargo's false information Wells is proximate cause of Adrain's damages, including foreclosure mediation fees and attorney's fees he incurred in his attempts to negotiate with Wells Fargo and refinance or modify his home loan. Dec. of Faust ¶ 53; Ex. BBB.

During the course of Adrain's communications with Wells Fargo, he received misleading and confusing correspondence, some stated he was eligible for HAMP; and other letters stated he was ineligible for HAMP, because he either made too much money or because his debt to income ratio was too high. SOF ¶ 12-13. After being told he was not eligible for HAMP in April 2012, Adrain received a call in June of 2012, and the representative told him that things have changed, and he may now be HAMP eligible. SOF ¶ 15. In reliance on Wells Fargo's statements, Adrain submitted and resubmitted documents on Wells Fargo's requests, many times Wells Fargo requested the exact same information from Adrain when he had just submitted the information only a couple of months prior. SOF ¶ 25-26, 36, 39. Wells Fargo has gone as far as requesting Adrain to authorize contact with Wells Fargo after Adrain's attorney sent a cease and desist letter, promising that Adrain was now HAMP eligible and if he wanted more information, that he would need to authorize Wells Fargo to resume contact. SOF ¶ 28-29. In reality, Adrain was not HAMP eligible. SOF ¶ 30. Nothing had changed from previous correspondence, but once

Adrain authorized communications from Wells Fargo, they re-initiated collections letters and telephone calls. Id.

Viewing the facts, evidence and inferences in favor of Adrain, genuine issues of material fact exist and Wells Fargo's motion for summary judgment must be denied.

### D. WELLS FARGO VIOLATED THE WASHINGTON STATE FORECLOSURE FAIRNESS PROGRAM.

RCW 61.24.163 discusses the timelines, procedures, duties, and responsibilities of the borrower, beneficiary and the mediator who are involved in the foreclosure mediation program. After a borrower has been referred and accepted into the mediation program, the borrower has 23 days from the Department of Commerce's notice of acceptance into the program to produce copies of their current and future income; debts and obligations; assets; expenses; tax returns for the previous two years; hardship information; and any other information required by a federal mortgage relief program. RCW 61.24.162)(4).

After the beneficiary receives the documents from the borrower, they have 20 days to disclose:

> *(a) An accurate statement containing the balance of the loan within thirty days of the date on which the beneficiary's documents are due to the parties; (b) Copies of the note and deed of trust; (c) Proof that the entity claiming to be the beneficiary is the owner of any promissory note or obligation secured by the deed of trust...(d) The best estimate of any arrearage and an itemized statement of the arrearages; (e) An itemized list of the*

*best estimate of fees and charges outstanding; (f) The payment history and schedule for the preceding twelve months, or since default, whichever is longer, including a breakdown of all fees and charges claimed; (g) All borrower-related and mortgage-related input data used in any net present values analysis. If no net present values analysis is required by the applicable federal mortgage relief program...[or a] substantially similar input data as determined by the department; (h) An explanation regarding any denial for a loan modification, forbearance, or other alternative to foreclosure in sufficient detail for a reasonable person to understand why the decision was made; (i) Appraisal or other broker price opinion most recently relied upon by the beneficiary not more than ninety days old at the time of the scheduled mediation; and (j) The portion or excerpt of the pooling and servicing agreement or other investor restriction that prohibits the beneficiary from implementing a modification, if the beneficiary claims it cannot implement a modification due to limitations in a pooling and servicing agreement or other investor restriction, and documentation or a statement detailing the efforts of the beneficiary to obtain a waiver of the pooling and servicing agreement or other investor restriction provisions.*

RCW 61.24.163(5).

Adrain submitted the necessary documents to Wells Fargo and the mediator within the statutorily prescribed 23-day timeframe. SOF ¶¶ 54-55; Dec. of Faust ¶ 49; Ex. XX. However, Wells Fargo failed to submit their required documents to Adrain or Pehlke within 20 days of receiving Adrain's documents. Dec. of Faust ¶ 49; Ex. XX. Wells Fargo consistently claimed Adrain failed to submit documentation, when in fact he had submitted multiple times. Id.; SOF ¶¶ 52-62, 65-66. Simultaneously, Wells Fargo refused to provide Adrain with the documents, required by law, for mediation. Dec. of Faust ¶ 49; Ex. XX.

Adrain's attorney, Mr. Roberts, sent emails to Wells Fargo and the mediator, Ms. Pehlke, stating the frustrations around Wells Fargo consistent rescheduling and postponement of mediation as well as their tactics of waiting until after the deadline had passed to request a *"single document, a 1099 for 2013. A document of that age could have been requested far in advance of the previously scheduled mediation."* Id. Mr. Roberts also noted that Wells Fargo had failed to disclose the proof of ownership of the note, the balance of the loan, an explanation for denying Adrain's loan modification, an appraisal not older than 90 days, and any applicable pooling agreements. Id. Adrain never received documentation revealing the non-HAMP participating investor. To date, Wells Fargo has still failed to disclose the documents which were necessary for mediation. Additionally, Wells Fargo sent a Trial Payment Plan before mediation had taken place and before they had produced statutorily required documentations for mediation. SOF ¶ 67.

### 1. Wells Fargo Failed to Mediate in Good Faith

See Supra § B1 for a discussion on Wells Fargo's failure to mediate in good faith pursuant to RCW 64.25.163(10).

### VI. CONCLUSION

For the aforementioned reasons, Adrain respectfully requests this Court to DENY Defendants' Motion for Summary Judgment.

PLAINTIFF ADRAIN'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 25

1    DATED this 8th day of August 2018.

2                                    /s/ Stephanie M. Faust
                                     Stephanie M. Faust WSBA # 52751
3                                    Kevin W. Roberts, WSBA # 29473
                                     Attorney for Plaintiff
4                                    Roberts Freebourn, PLLC
                                     313 W. Riverside Ave.
5                                    Spokane, WA 99201
                                     Telephone: (509) 381-5262
6                                    Facsimile: (509) 777-2215
                                     Email: Kevin@robertsfreebourn.com
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

PLAINTIFF ADRAIN'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 26

# CERTIFICATE OF SERVICE

I hereby certify that on the date given below, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing the following persons:

| | |
|---|---|
| Robert W. McDonald | VIA CM/ECF [x] |
| Quality Loan Service Corp. of WA | VIA CERTIFIED MAIL [ ] |
| 108 1st Ave. S., Ste. 202 | VIA EMAIL [ ] |
| Seattle, WA 98104 | VIA COURIER [ ] |
| | |
| Valerie I. Holder | VIA CM/ECF [x] |
| Keesal, Young & Logan | VIA CERTIFIED MAIL [ ] |
| 1301 Fifth Ave., Ste. 3100 | VIA EMAIL [ ] |
| Seattle, WA 98101 | VIA COURIER [ ] |

DATED this 8th day of August 2018.


s/ Stephanie M. Faust
Stephanie M. Faust, WSBA #52751
ROBERTS | FREEBOURN, PLLC
1325 W. 1st Ave., Ste. 303
Spokane, WA 99201
Telephone: (509) 381-5262

PLAINTIFF ADRAIN'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 27